## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **SAMUEL MORSE,** | |
| *Plaintiff*, | **CIVIL ACTION FILE NO.** |
| **v.** | |
| **SAPORI DI NAPOLI, LLC, AMBROGIO FLORIO and DANIELE FLORIO,** | **JURY DEMAND** |
| *Defendants*. | |

## COMPLAINT

**NOW COMES** Samuel Morse (hereinafter "Plaintiff") and asserts this Complaint against Defendants Sapori di Napoli, LLC (hereinafter "Defendant SDN"), Ambrogio Florio (hereinafter "Defendant A. Florio"), and Daniele Florio (hereinafter "Defendant D. Florio") (hereinafter Defendant SDN, Defendant A. Florio, and Defendant D. Florio, collectively "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.* (hereinafter "FLSA" or "the Act"). Plaintiff states more fully as follows:

### INTRODUCTION

1.

Plaintiff worked for Defendants within three (3) years preceding the filing of this Complaint. Defendants failed and willfully refused to pay Plaintiff minimum wages equal to or exceeding the amount required under the FLSA, 29 U.S.C. §206.

Defendants failed and willfully refused to pay Plaintiff proper minimum wages as required by the FLSA, 29 U.S.C. §207. Plaintiff seeks his unpaid minimum wages for three (3) years preceding the filing of this Complaint (hereinafter "the Relevant Period"), liquidated damages, and his attorneys' fees and costs of litigation under the Act, amongst other FLSA claims.

2.

More specifically, Defendants violated the Act in several specific ways. Defendants violated the tip pool regulations in that (a) back-of-house employees illegally received tips from service staff, (b) no accurate description of the tip pool was ever provided to the service staff, and, (c) accurate records of gross tips received and the tip pool distribution were never kept and/or provided to the service staff.

JURISDICTION

3.

Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*. This Court has original jurisdiction pursuant to 29 U.S.C. §216(b), and 28 U.S.C. §1331, §1132(a)(1)(B), and §1337. The Court has pendent jurisdiction over Plaintiff's Georgia state law claims pursuant to 28 U.S.C. §1367.

VENUE

4.

Defendant SDN a Georgia-based corporation may be served via its Registered Agent Daniele Florio at 314 Church Street, DeKalb County, Decatur, Georgia 30030. Defendant operates a business, Sapori di Napoli, a restaurant, with its principal location at 314 Church Street, DeKalb County, Decatur, Georgia 30030. Venue for this action properly lies in the Northern District of Georgia, Atlanta Division, pursuant to 28. U.S.C. §1391(b) and §1391(c)(2), and Local Rule 3.1, and 3.4, N.D. Ga.

DEFENDANTS' COVERAGE UNDER THE FLSA
Sub-Part 1: Defendant SDN

5.

Defendant SDN operates a restaurant and bar named Sapori di Napoli, with its principal location at 314 Church Street, DeKalb County, Decatur, Georgia 30030 (hereinafter "the Restaurant").

6.

Defendant SDN buys supplies and equipment, including beef and other food products, wine, liquor, and beer out of the stream of interstate commerce for use at the Restaurant.

7.

Defendant SDN utilizes interstate credit/debit card processing in the course of its business at the Restaurant.

8.

Defendant SDN utilizes the interstate banking system in the course of its business at the Restaurant.

9.

In calendar year 2022, Defendant SDN had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

10.

For calendar year 2023, Defendant SDN has (or will have) an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

11.

Defendant SDN constitutes an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r), §3(s)(1),

§6(a) and §7(a) of the Act, 29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a), for the years 2022 through 2023.

12.

For the calendar year 2022, Defendant SDN is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

13.

For the calendar year 2023, Defendant SDN is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

14.

Defendant SDN is an "employer" in an industry affecting commerce within the meaning of §3(d) of the Act, 29. U.S.C. §203(d).

15.

Defendant SDN was an "employer" of Plaintiff as defined in §3(d) of the Act.  29 U.S.C. §203(d), in 2022 and 2023.

16.

During the relevant time period – 2022 through 2023 – Defendant SDN constituted an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r), §3(s)(1), §6(a) and §7(a) of the Act.  29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a).

Sub-Part 2: Owners as "Employers"

17.

Defendant A. Florio and Defendant D. Florio are co-owners of Defendant SDN. Defendant A. Florio and Defendant D. Florio operate Defendant SDN's Restaurant on behalf of Defendant A. Florio and D. Florio, the owners.

18.

Defendant A. Florio and Defendant D. Florio manage the day-to-day operations of Defendant SDN, including the Restaurant.

19.

Defendant A. Florio acted and acts directly in the interest of Defendant SDN in relation to Defendant SDN employees such as Plaintiff. Thus, Defendant A. Florio was an "employer" of the Plaintiff within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d), for the term 2022 through the present.

20.

Defendant D. Florio acted and acts directly in the interest of Defendant SDN in relation to Defendant SDN employees such as Plaintiff. Thus, Defendant D. Florio was an "employer" of the Plaintiff within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d), for the term 2022 through the present.

FACTS

Sub-Part 1: Basic Employment Facts.

21.

Plaintiff is currently working for Defendants and Defendants have employed Plaintiff from approximately April 2022 through the present. Plaintiff usually works three (3) shifts a week, generally Friday, Saturday, and Sunday.

22.

Defendants employ the Plaintiff to work as a server at the Restaurant.  The Defendants have only employed Plaintiff in the position of server.

23.

Defendants operate the Restaurant to sell food, salads, and alcoholic beverages, amongst other dishes and beverages, in Decatur, DeKalb County, Georgia.

24.

Defendants pay the Plaintiff $2.13 an hour, plus tips shared via a tip pool, for his work as a server.

25.

Defendants do not pay the Plaintiff minimum wage for his work as a server. Instead, Defendants pay the Plaintiff a sub-minimum wage in which tips Plaintiff

receives from the Restaurant's customers are intended to pay the remaining $5.12 in minimum wages required by Federal law as part of the FLSA's "tip credit."

26.

The Restaurant's operating hours are from 3:00 PM until 9:30 PM on Tuesdays, Wednesdays, and Thursdays. The Restaurant is open from 3:00 PM through 10:30 PM on Fridays, from 1:00 PM through 10:30 PM on Saturdays, and from 1:00 PM through 9:00 PM on Sundays. The Restaurant is closed on Monday.

27.

The Plaintiff's start times vary from day to day. By way of example, the Plaintiff typically arrives for work at the Restaurant at 5:00 PM on Fridays, 12:30 PM on Saturdays, and 12:30 PM on Sundays.

28.

The shift ended when either the Plaintiff was relieved of his duties as a server or all side work was completed, all cash drawers counted down, and all employees were released for the night; the matters are often arranged between servers and authorized, either directly or implicitly by Defendants.

29.

While the foregoing paragraphs describe the regular hours of operation, the Plaintiff's actual work hours depended on the Restaurant's volume, shift, day of the week, and the amount of side-work assigned.

30.

Defendants utilized a tip pool as that term is defined under the Act, *see e.g.*, 20 C.F.R. Sub-Part D, 29 C.F.R. §531.54 and 29 U.S.C. §203(m).

31.

Defendants recorded the Plaintiff's hours through a time clock on the wall adjacent to the back kitchen. Plaintiff "clocks in / clocks out" by swiping an employee card, assigned by Defendants to the Plaintiff, to record his time on the clock and completion of time on the clock.

32.

Defendants pay Plaintiff bi-weekly via a check issued from a third-party payroll processor, Paychecks, Inc. Defendants have a workweek that begins on Mondays and ends on Sundays. Defendants' third-party payroll processor issues a direct deposit on a bi-weekly basis and provides a paystub which records the Plaintiff's hours, sub-minimum wage, wages via the tip-credit, and tip income received.

33.

Plaintiff generally receives cash tips in a work night, but it is not consistent and the amount fluctuates greatly. Plaintiff, and other servers working the same shift as Plaintiff, deposit their cash tips received from the Restaurant's customers in to a container, a "tip box" for purposes of tip pooling.

34.

Plaintiff and/or another server will tally the cash tips in the Restaurant's "tip box" either (a) at the end of the shift or (b) at the time in the shift when a server is leaving work from the Restaurant.

35.

The Restaurant policy is that cash tips in the "tip box" are divided on a per-server basis, i.e. the cash tips deposited in to the Restaurant's "tip box" are divided equally amongst the servers, including Plaintiff, in a shift and are not distributed to the back-of-the-house employees.

36.

Defendants retain and calculate **all** of the servers' tips received from customer's credit cards. The Defendants then distribute the servers' tips, based on the Restaurants' own calculations, to the Plaintiff (as well as other servers) on a bi-weekly basis.

Sub-Part 2: Tip Pool Violations.

37.

Defendant SDN uses a point-of-sale system for recording sales, tips, taxes, and other data from financial transactions.

38.

Defendants provided training to Plaintiff in or about April 2022, at the Restaurant.

39.

Defendants did not provide Plaintiff with training material nor written material that refers to, state, or explain the tip pool percentages or allocations.

40.

Defendants did not provide an adequate oral explanation of the Restaurant's tip pool percentages or allocations to the Plaintiff at the time of hiring or training.

41.

Defendants required servers and other front of house staff, including Plaintiff, to participate in a tip pool.

42.

Defendants' tip pool policy practice required servers to contribute **all** of their tips in to the Defendants' tip pool.

43.

Defendants tip pool required the Plaintiff to contribute **all** of his tips to the tip pool.

44.

Defendants' tip pool practice and procedure required tip pool contributors, including the Plaintiff, to contribute all of their tips in to the tip pool for the entire shift. Plaintiff contributed to two permutations of the tip pool, one for cash tips and another for credit card tips.

45.

Defendants' tip pool for "cash" tips, or tips left by customers to the servers – such as the Plaintiff – in the form of cash (hereinafter referred to as the "Cash Tip Pool.") Servers, including the Plaintiff, would provide their cash tips to the Cash Tip Pool during the course of a shift at the Restaurant. The Cash Tip Pool would be tallied and distributed by the servers on a per shift basis, with servers receiving a pro-rata share of the Cash Tip Pool based on the number of  servers that worked in the course of a shift, whereby the Cash Tip Pool was totaled and divided by the total number of servers.

46.

Defendants' tip pool practice and procedure was to distribute all "cash" tips received nightly on a pro-rata basis in line with the preceding paragraph's description. In certain shifts, if a server left early, the cash tips would simply be counted and divided by the number of servers for that shift, with the remaining cash

tips retained in the cash tip box until later in the shift for a pro-rata distribution amongst the servers with any subsequent cash tips earned that shift.

47.

Defendants' tip pool practice and procedure was to tally and record all credit card tips allocated as part of the tip pool and distribute these bi-weekly in the form of a direct deposit of a check provided by Defendants through a third-party payroll processor. There is a one week period between the end of the work week and the actual payment of the pay check by Defendants.

48.

On information and belief, the Defendants' tip pool practice and procedure is to record the parties and tips and allocations for credit card based tips and use this data to distribute tip pool allocations on via payroll checks distributed on a bi-weekly basis.

49.

Defendants' tip pool practice and procedure is to include the back of house employees, including the cooks, as a party that receives a tip pool allocation from Defendants' tip pool.

50.

Defendants' distributed tips from the tip pool to the back-of-house employees, including the cooks, in each shift the Plaintiff worked during the Employment Period.

51.

In or about October 2023, Plaintiff complained to the Defendants that the tip pool policies were never adequately explained to the Plaintiff.

52.

Subsequently after Plaintiff complained about the tip policy to the Defendants, the Defendants privately met with the Plaintiff but could not explain how the tip pool policy worked in practice.

53.

On information and belief, the Defendants impermissibly retain and a portion of the credit card tips retained by Defendants for the tip pool and distribute a portion of these tips to the back-of-house employees, specifically cooks.

COUNT I:  FAILURE TO PAY MINIMUM WAGE – TIP POOL VIOLATIONS

54.

Plaintiff restates and realle21 paragraphs one (1) through fifty-three (53), *supra*.

14

55.

Defendants' willful violations of the U.S. Department of Labor's regulations governing tip pools, i.e., (a) allowing back-of-house staff to participate, (2) failing to inform the Plaintiff of the terms of the tip pool, and (3) failing to distribute all of the tip pool to customarily tipped employees (and thus illegally retaining a portion of the tip pool for back-of-house and/or other entities), constitutes a violation of the §6 of the Act, 29 U.S.C. §206.

57.

Defendants owe Plaintiff back wages in an amount to be determined at trial for (1) all illegally retained tips, (2) all tips distributed to back-of-house employees and other illegal tip allocation receivers, and (3) for the full, non-tipped minimum wage for all hours worked as servers pursuant to 29 U.S.C. §206 and §216.

58.

Additionally, Defendants owe Plaintiff liquidated damages in an equal amount for all illegally retained tips, all tips paid to back-of-house and managerial and/or supervisor employees, and for all unpaid full (non-tip credit) minimum wages pursuant to 29 U.S.C. §206 and §216.

## JURY TRIAL

### 59.

Plaintiff demands a jury trial as to all issues triable by a jury trial.

## PRAYER FOR RELIEF

### 60.

Based upon the forgoing paragraphs, Plaintiff respectfully ask this Court to find and order the following:

A.  That the Court grant Plaintiff a trial by jury on all issues of fact;

B.  That the Court find and declare that Defendants Amrbogio and Danielle Florio acted directly in the interest of Defendant SDN's relation of the Plaintiff, and that as such Defendants Amrbogio and Danielle Florio were an "employer" of Plaintiff within the meaning of §3(d) of the Act, 29 U.S.C. §203(d);

C.  That the Court find and declare that Defendant Sapori Di Napoli, Defendant Ambrogio Florio, and Defendant Danielle Florio, collectively, have violated the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*., have failed to properly pay the Plaintiff his minimum wages as required, and to have acted "willfully" thus entitling the Plaintiff to liquidated damages

D.  That Defendant Sapori Di Napoli, Defendant Ambrogio Florio, and Defendant Danielle Florio be ordered to pay Plaintiff back wages equaling the minimum required under §6 of the Act, 29 U.S.C. §206, for all applicable workweeks;

16

E.  That Defendant Sapori Di Napoli, Defendant Ambrogio Florio, and Defendant

Danielle Florio be ordered to pay Plaintiff all tips illegally distributed to back-

of-house employees and/or any unauthorized parties;

F.  That Defendant Sapori Di Napoli, Defendant Ambrogio Florio, and Defendant

Danielle Florio be ordered to pay Plaintiff liquidated damages under the Act;

G.  That Defendant Sapori Di Napoli, Defendant Ambrogio Florio, and

Defendant Danielle Florio be ordered to pay Plaintiff's reasonable attorneys'

fees, and costs of this action pursuant to 29 U.S.C. §216; and,

H.  For such other and further relief as the Court finds just and appropriate.

Respectfully submitted this seventh (7th) day of November, 2023.

> */s/ Peter H. Steckel*
> Peter H. Steckel
> Georgia Bar Number 491935
> *Counsel for Plaintiff*

Steckel Law, L.L.C.
1120 Ivywood Drive
Athens, Georgia 30606
(404) 717-6220
Email: peter@SteckelWorkLaw.com